IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BLENKER BUILDING SYSTEMS, INC.,

|  |  |  |
|---|---|---|
| | Plaintiff, | |
| v. | | OPINION and ORDER |
| ARRAY FINANCIAL SERVICES, | | 17-cv-838-jdp |
| | Defendant. | |

---

This case arises out of the actions of three companies involved in a construction project in Dane County, Wisconsin. Plaintiff Blenker Building Systems, Inc. was a contractor; Catspaw Construction was a potential subcontractor; and defendant Array Financial Services was the insurer from which Catspaw sought a bid bond.[1] The problem arose after Array issued a bid bond to Catspaw but made Dane County rather than Blenker the obligee. Blenker says that it accepted Catspaw's bid in reliance on the bond and then suffered damages when it later removed Catspaw from the project and could not enforce the bond against Catspaw. Blenker asserts claims against Array for strict misrepresentation and negligent misrepresentation. Catspaw is not a party.

---

[1] The parties do not explain what a bid bond is, but the court's understanding from context is that a contractor obtains a bid bond to provide a guarantee to the project owner that the bidder will take on the job if selected. *James Cape & Sons Co. v. Mulcahy*, 2005 WI 128, ¶ 19, 285 Wis. 2d 200, 211, 700 N.W.2d 243, 248 ("[B]id bonds typically provide a financially responsible party who will pay all or a portion of the damages caused if the bidder to whom a contract is awarded refuses to enter into it.") (internal quotations omitted).

Array has filed a motion for summary judgment, Dkt. 15, which is ready for review. Although Array may have been negligent in its handling of the bid bond, the court will grant Array's motion because no reasonable jury could find that Blenker justifiably relied on any representations made by Array.

## UNDISPUTED FACTS

The following facts are undisputed.

Plaintiff Blenker Building Systems, Inc. manufactures "structural building components." Defendant Array Financial Services, Inc. is an insurance agency. Blenker is citizen of Wisconsin (its state of incorporation and the location of its principal place of business) and Array is a citizen Minnesota (its state of incorporation and the location of its principal place of business).

In 2016, Middleton Center PH 1, LLC undertook a project to reconstruct some apartments in Dane County, Wisconsin. The parties refer to the reconstruction job as "the Miron Project." In May 2016, Blenker submitted a document called "framing package proposal" related to that project. The proposal included a bid of $1,035,009 and summarized the work that would be performed under the headings "floor system & basement," "wall panel system," "roof system," "installation of doors and windows," and "erection labor." The document includes the following language: "Acceptance of this proposal includes acceptance of all the additional terms and conditions attached. The prices, specifications, and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined on attached." There was a space on the document for Middleton Center to sign the document, but Middleton Center left the space blank.

Later that month, Catspaw Construction contacted Blenker about acting as a subcontractor for Blenker for the purpose of installing the components that Blenker would manufacture. Catspaw and Blenker began negotiating the terms of an agreement.

On July 6, Blenker submitted a revised bid of $1,151,323 for the Miron Project. It included the same summary of work and the same language regarding acceptance as the original bid. Again, Middleton Center did not sign the document.

On July 21, Blenker sent Catspaw an email proposing some specifications for the subcontract work, including a set schedule, site plans, exterior elevations, and a subcontractor scope checklist. Blenker wrote, "If you accept the scope listed above the compensation for this project is $337,147.00 or $5.30 sqft." In response, Catspaw wrote that it was "on it!" and would have references contact Blenker.

On July 22, Catspaw contacted Array, asking it to send a certificate of insurance to Blenker to satisfy Blenker's requirements for liability insurance. The same day, Catspaw sent Array the documents Catspaw had received from Blenker. Catspaw also provided references to Blenker, completed a "pre-qualification subcontractor form," and told Blenker that it was "looking forward to being part of the team!"

On July 25, Blenker sent an email to Catspaw and Array, attaching a draft contract between Catspaw and Blenker and asking for information on "bond progress." Dkt. 26-2, at 1. A few hours later, Blenker sent another email to Array, asking for "further information on how things are going on your end" and stating that "[w]e are not signing our contract with Miron [Middleton Center's agent] until we have this piece squared away." *Id.* at 28.

Later the same day, Array emailed Catspaw and Blenker a copy of what it called "the bid bond for the Middleton Center Reconstruction Project." Dkt. 18-1. The bond identifies

Catspaw as the principal, Old Republic as the surety, and Dane County as the obligee. Blenker is not mentioned anywhere in the bond. The amount on the bond is $360,000, which is more than the amount of the contract between Catspaw and Blenker.[2] Catspaw, Array, and Old Republic all signed the bond.

On August 2, Blenker signed its contract with the Middleton Center for the Miron Project. On August 11, Blenker signed an amended contract with the Middleton Center, increasing the contract price from $1,175,200 to $1,211,900.

On August 29, Catspaw signed its contract with Blenker for a price of $312,497. Blenker never signed it.

On September 1, Blenker asked Array about the status of a performance bond for Catspaw, but Array did not respond.[3] In November 2016, Blenker again asked Array about the performance bond. The following day, Array informed Blenker that it was "waiting for some additional information from" Catspaw. Later the same day, Array asked Blenker to "provide specifications for the job/a copy of the contract." In response, Blenker resubmitted the same materials it had given Array before.[4]

---

[2] Array says that it issued the bond "in error," but it does not explain what that means or why it listed Dane County as the obligee or issued the bond in the amount it did.

[3] The parties do not explain what a performance bond is or how it differs from a bid bond. The court's understanding is that a performance bond provides an additional level of protection after the parties enter into the contract in the event that the contractor fails to perform on the contract. *Milwaukee Bd. of Sch. Directors v. BITEC, Inc.*, 2009 WI App 155, ¶ 10, 321 Wis. 2d 616, 623, 775 N.W.2d 127, 130 (performance bond "becomes void when [the contractor] has faithfully performed all of the terms of the contract and has indemnified [the project owner] for all costs suffered due to any failure on the part of [contractor] to fully perform the contract").

[4] Array does not explain why it declined to issue a performance bond or identify what actions it was taking to determine whether it would issue the bond.

Ultimately, Blenker took Catspaw off the project because it did not secure a performance bond. Although Blenker was able to complete the project without Catspaw, the project was two or three days late.

In February 2017, Blenker submitted a claim to Old Republic as the surety of the bid bond. They settled the dispute for $150,000.

Blenker seeks damages of approximately $275,000 from Array. Because the amount in controversy is more than $75,000 and the parties are citizens of different states, the court may exercise jurisdiction under 28 U.S.C. § 1332.


ANALYSIS

Array says that it is entitled to summary judgment on Blenker's misrepresentation claims for three reasons: (1) Array did not make any misrepresentations; (2) Blenker did not rely on any representations that Array made; and (3) any reliance by Blenker was not reasonable. Even if Array is wrong about the first two reasons, the court agrees that no reasonable jury could find that any reliance by Blenker was justified. The court will grant Blenker's motion for summary judgment.

The first element of a misrepresentation claim is that the defendant made a representation of fact that was untrue. *Malzewski v. Rapkin*, 2006 WI App 183, ¶ 20, 296 Wis. 2d 98, 113, 723 N.W.2d 156, 163. In this case, Blenker says that "Array represented to Blenker that the Bid Bond was valid and enforceable in favor of Blenker." Dkt. 25, at 1. But, in its summary judgment brief, Blenker doesn't point to any particular statements in which Blenker made that representation. In its amended complaint, Blenker says that Array made the representation simply by "providing the Bid Bond." Dkt. 12, ¶ 15.

Neither side develops an argument as to whether the act of providing a bond can qualify as a "representation" under Wisconsin law. But the court will assume that it can (and that such a representation was false) because it does not make any difference to the outcome of the case.[5]

The next question is whether Blenker relied on the misrepresentation. *Malzewski*, 2006 WI App 183, ¶ 19. Blenker says that it relied on the bid bond because it would not have entered into the contract with Middleton Center without the bond. Array says that Blenker could not have relied on the bond because Blenker made two bids to Middleton Center *before* Array issued the bond to Catspaw. If Middleton Center had accepted either bid, Array says, Blenker would have been obligated to perform the work regardless whether Catspaw received a bond from Array. In other words, Array says that Blenker's bids to Middleton Center were contractual offers that show that Blenker was committed to the project with or without Catspaw's participation.

In response to Array's argument, Blenker says that its bids "do not demonstrate that Blenker was committed to the project before it had interaction with Array." Dkt. 25, at 5. Rather, the bids were only "framing proposals," which were "extremely different" from the contract that it later signed with Middleton Center. *Id.* Blenker supports those statements with a declaration from Blenker's president, Dkt. 27, ¶ 10, but the legal effect of a document is a question of law, *Schimmels v. Noordover*, 2006 WI App 7, ¶ 10, 288 Wis. 2d 790, 796, 709 N.W.2d 466, 469–70, so the president's opinion is irrelevant.

---

[5] In a section of its brief discussing a different element of its claims, Blenker makes a conclusory assertion that "the bid bond was a representation that the bond agency has reviewed the applicant and found the applicant to be creditworthy, capable, and has the wherewithal to fulfill a contractual obligation." Dkt. 25, at 10. Because Blenker did not include that alleged representation in his complaint and he does not develop an argument about the representation in his brief, the court declines to consider it.

The bid itself includes the following language: "Acceptance of this proposal includes acceptance of all the additional terms and conditions attached. The prices, specifications, and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined on attached." Blenker fails to explain why that language would not bind both parties. In fact, the Wisconsin Supreme Court has stated that "bidders [for construction jobs] are generally bound by the bids they submit." *James Cape & Sons Co. v. Mulcahy*, 2005 WI 128, ¶ 16, 285 Wis. 2d 200, 210, 700 N.W.2d 243, 248. Although it is certainly true that the contract that Blenker and Middleton Center later signed is more detailed than the bid, that does not mean that the bid did not qualify as a contractual offer.

Perhaps a stronger argument is one that Blenker does not make, which is that Middleton Center had not yet accepted Blenker's bid when Array issued the bid bond. Thus, if Array had refused to issue a bond for Catspaw, Blenker could have withdrawn its bid at that time or attempted to find a different subcontractor. Again, the court will assume for the purpose of Array's summary judgment motion that Blenker relied on the bid bond.

The final question is whether any reliance by Blenker was justified. Array contends and Blenker does not deny that justifiable reliance is an element of any common law misrepresentation claim in Wisconsin. Most Wisconsin case law appears to support that view.[6]

---

[6] *E.g.*, *Hennig v. Ahearn*, 230 Wis. 2d 149, 173, 601 N.W.2d 14, 25 (Ct. App. 1999) ("A misrepresentation of fact and justifiable reliance thereon are elements common to all three types of misrepresentation."). *See also K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, ¶ 36, 301 Wis. 2d 109, 129–30, 732 N.W.2d 792, 802 ("*Unlike common law causes of action for misrepresentations*, reasonable reliance is not the standard for a . . . claim [under Wis. Stat. § 100.18] because the legislature created a distinct cause of action.") (emphasis added); *Hatleberg v. Norwest Bank Wisconsin*, 2005 WI 109, ¶¶ 38-40, 283 Wis. 2d 234, 254–56, 700 N.W.2d 15, 25–26 (following Restatement (Second) of Torts § 552, which bars liability for

In at least one case, however, a Wisconsin court has described common law misrepresentation claims without reference to justifiable reliance, at least as to negligent misrepresentation.[7] But the Wisconsin Supreme Court's most recent discussion of the issue supports the view that justifiable reliance is an element of all common law misrepresentation claims. *Novell v. Migliaccio*, 2008 WI 44, ¶ 46, 309 Wis. 2d 132, 150, 749 N.W.2d 544, 553 ("The fact that common law misrepresentation claims require reasonable reliance [i]s insufficient for us to conclude that a § 100.18 claim requires reasonable reliance."). Regardless, because the parties do not dispute the issue, this court need not resolve any potential inconsistency in Wisconsin law.

Moving on to the merits, the court concludes that any reliance by Blenker was not justified. "Negligent reliance is not justifiable," *Bank of Sun Prairie v. Esser*, 155 Wis. 2d 724, 732, 456 N.W.2d 585, 589 (1990), which means that a party cannot rely on false statements if it can discern the truth through "the exercise of ordinary observation," *Williams v. Rank & Son Buick, Inc.*, 44 Wis. 2d 239, 245, 170 N.W.2d 807, 810 (1969) (internal quotations omitted). A party "may not close his eyes to what is obviously discoverable by him." *Id.* (internal quotations omitted). *See also Hennig v. Ahearn,* 230 Wis. 2d 149, 170, 601 N.W.2d 14, 24 (Ct. App. 1999) ("The general rule in Wisconsin, as elsewhere, is that the recipient of a fraudulent misrepresentation is justified in relying on it, unless the falsity is actually known or is obvious to ordinary observation.").

---

"negligently providing information" in the absence of "justifiable reliance").

[7] *Imark Indus., Inc. v. Arthur Young & Co.*, 141 Wis. 2d 114, 130, 414 N.W.2d 57, 64 (Ct. App. 1987) ("[W]hile justifiable reliance is an element of intentional misrepresentation and strict responsibility, it is not a separate element of negligent misrepresentation."). *See also*; Wis JI— Civil 2403 (listing elements of negligent representation without including justifiable reliance).

In this case, the bid bond clearly stated that "Dane County" was the obligee, not Blenker. And the amount listed on the bond was $360,000, which was more than the amount of the bid itself, so it should have been another indicator that something was wrong with the bond. The parties debate whether Blenker looked at the bond when Array issued it, but that is not the important point. The question is whether Blenker could have discovered through the exercise of ordinary observation that it was not the obligee on the bond. Blenker identifies no reason it could not have. The bid bond is a one-page document. The obligee is not hidden or obscured in any way. Thus, the facts of this case are similar to *Owen v. Wangerin*, 985 F.2d 312, 316 (7th Cir. 1993), in which the court applied Wisconsin law to conclude that reliance on an oral representation regarding the size of a land parcel was not justified when the deed "stated on its face" what the correct size was.

Blenker does not identify any reason that it should be excused from its own negligence in failing to discover that it was not the obligee on the bid bond. For example, Blenker does not allege that Array discouraged Blenker from reviewing the bond or that the two companies have a special relationship that caused Blenker to use less care. And Blenker is not an unsophisticated consumer. *Id.* (in determining whether failure to read contract is justified, "Wisconsin courts consider the relationship of the parties and the degree of trust between them, the sophistication of the parties, and whether there were statements made that influenced the person not to read the agreement") (citations omitted).

Blenker asserts two reasons for denying summary judgment on the issue of justifiable reliance. First, it says that justifiable reliance is a question of fact, so it should be reserved for the factfinder. But as with any other question of fact, a court may decide the issue of justifiable reliance when there are no underlying factual disputes and no reasonable jury could reach a

different conclusion. *Owen*, 985 F.2d at 316; *Hennig*, 230 Wis. 2d at 170, 601 N.W.2d at 24. Because that is the situation in this case, summary judgment is appropriate.

Second, Blenker says that it was entitled to rely on a belief that the bond was enforceable because a court could reform the bond to include the correct obligee and the correct amount under the "mutual mistake" doctrine in contract law. It devotes several pages of its brief, citing cases from outside Wisconsin, to an argument that the facts of this case qualify as a mutual mistake.

This is a creative argument, but it is not persuasive, for several reasons. First, Blenker is asserting a tort claim against Array, not a claim for breach of contract. Blenker cites no authority for the view that the mutual mistake doctrine has any relevance to a tort claim.

Second, Blenker ignores the law on the mutual mistake doctrine in Wisconsin, which includes the same requirement of justifiable reliance as a claim for misrepresentation. *Hennig*, 230 Wis. 2d at 176, 601 N.W.2d at 27 ("As with his misrepresentation claim, however, [the plaintiff] must establish that his reliance on [the defendant's] implicit misrepresentation was 'justified' in order to prevail on his contract theory."). Thus, even if Blenker could rely on the doctrine, it would not answer the question whether Blenker's conduct was in fact justified.

Third, Blenker's argument under the mutual mistake doctrine conflicts with his misrepresentation claims, which is premised on the view that Array made a false representation that the bond "was valid and enforceable in favor of Blenker." If the bond could be reformed under the mutual mistake doctrine as Blenker suggests, then it *was* valid and enforceable and there was no misrepresentation by Array under Blenker's own theory. Along the same lines, if it is true that a court could reform the bond, then Blenker could have obtained full relief against

Catspaw or the surety, suggesting that Array's conduct is not the source of any harm to Blenker. Thus, the mutual mistake argument is self-defeating.

Fourth, the argument is simply inconsistent with common sense. Under Blenker's view, even if it had realized when Array issued the bond that it was not the obligee listed on the bond, Blenker would have been entitled to sit back and do nothing and then sue Array if anything went wrong. The court declines to adopt such a view.

Array's mistake was unfortunate and it may have been negligent. But there is no evidence of any deceptive intent by Array, and Blenker could have easily discovered the errors in the bond. Blenker cannot prevail on a misrepresentation claim under these circumstances. The court will grant Array's motion for summary judgment.

ORDER

IT IS ORDERED that defendant Array Financial Service, Inc.'s motion for summary judgment, Dkt. 15, is GRANTED. The clerk of court is directed to enter judgment in Array's favor and close this case.

Entered October 12, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge